IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**LAWYER WHEELER and ASHLEY SELMAN**
**FARMS PARTNERSHIP** **PLAINTIFFS**

**v.** **CAUSE NO. 4:23-cv-243-DMB-JMV**

**UMB BANK, N.A. and HORNE LLP** **DEFENDANTS**

## ORDER

This matter is before the court on Defendant UMB Bank, N.A.'s ("UMB's") motion [Doc. 38] to take remand-related discovery of Plaintiffs in the form of interrogatories, requests for production, and depositions. As discussed below in more detail, the motion will be denied because the proposed discovery is neither necessary nor "tightly tethered" and "sharply tailored" to expose either (1) that the complaint omits a discrete fact which if disclosed would demonstrate that an otherwise plausibly stated claim is not possible and/or (2) misstated a discrete fact which if disclosed would do likewise.

### I. Background and procedural status

This is an action filed originally in state court by Plaintiffs, who are Mississippi farmers who delivered grain to Express Grain Terminals, LLC ("EGT") and were never paid for it by EGT.[1]

Plaintiffs seek to hold both UMB, a national bank and a citizen of Missouri, who held security interests in the grain delivered to EGT, and Horne, LLP, a citizen of Mississippi, who

---

[1] This state court action, subsequently removed to the Northern District of Mississippi, is one of several filed by Mississippi farmers against these same defendants arising from grain delivered to EGT. Those cases are *Island Farms, LLC, et al. v. UMB Bank, N.A.*, Case No. 3:21-cv-00721-HTW-LGI; *Howard Turner, d/b/a Triple Tee Farms and Killebrew Cotton Co. v. UMB Bank, N.A. and Horne LLP*, Case No. 3:23-cv-00005-HTW-FKB (the "Triple Tee Farms Action"); and *M&W Farms, et al. v. UMB Bank, N.A. & Horne LLP*, Case No. CV-23-9SMT2 (the "M&W Farms Action"). In those actions, the plaintiffs bring almost the exact same claims as those before the court in the instant action.

conducted audits of EGT's financial status during relevant times, liable for their losses. Against Horne, in particular, Plaintiffs allege the following state law causes of action: (I) aiding and abetting fraud; (II) intent, negligence, negligence *per se*, and gross negligence; (III) negligent misrepresentation; and (IV) unjust enrichment.[2]

On December 29, 2023, Defendants removed the case to federal court asserting that Horne, the non-diverse defendant, had been improperly joined to defeat diversity jurisdiction. Pursuant to local civil rule 16(b), any discovery in the case was stayed pending a determination of the motion to remand. Shortly thereafter, each defendant moved to dismiss the claims against them for failure to state a claim under FRCP 12(b)(6). Then, on January 17, 2024, Plaintiffs moved to remand [Doc. 13] this case to state court for lack of diversity jurisdiction, and UMB subsequently filed a motion to take remand-related discovery [Doc. 38] on February 7, 2024. UMB contends, in a nutshell here, but discussed in more detail below, that discovery will establish that the plaintiffs have omitted discrete facts from the complaint as against Horne, which if disclosed would establish that Plaintiffs have no possibility of success on any of the four claims asserted against it. Plaintiffs opposed the motion for discovery and the matter has been fully briefed.

## II. The Instant Motion for Remand-Related Discovery

In this case, Defendant UMB argues Plaintiffs have omitted discrete facts necessary under Mississippi law for Plaintiffs to establish a plausible claim against Horne. In particular,

---

[2] These same claims are also asserted against the diverse defendant, UMB, and UMB asserts the same defenses to the claims as are raised in defense by Horne. This fact alone, according to Plaintiffs, would defeat an improper joinder argument under what is sometimes referred to as the "common defense doctrine" discussed in *Smallwood*. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 579-81 (5th Cir. 2004) (Jolly, J., dissenting). However, that issue is not before the undersigned, but rather the District Judge assigned this case. As discussed hereafter, whether improper joinder of the non-diverse defendant, Horne, occurred in this case is not necessary to determine whether the discovery proposed by UMB to Plaintiffs related to improper joinder is permissible under the circumstances of this case and the applicable authorities discussed herein.

UMB asserts, among other arguments, that the fraud and negligence-based claims (Counts I-III) all require the existence of a legal duty owed by Horne to Plaintiffs. *See Darling Ingredients Inc. v. Moore*, 337 So.3d 214, 216 (Miss. 2022). According to UMB, the complaint does not state any facts to give rise to such a duty under Mississippi law nor are there facts alleged to establish a breach of any duty by Horne causing injury to Plaintiffs.[3] As for the final claim for unjust enrichment, Defendants assert the Complaint does not allege Horne benefited from goods transferred or services provided by Plaintiffs. Therefore, Horne cannot be liable for *quantum meruit* damages; instead, the person who transferred the goods or provided the services can recover *quantum meruit* damages only from the person who was reasonably expected to pay. *Ground Control, LLC v. Capsco Indus., Inc.*, 214 So. 3d 232, 243–45 (Miss. 2017) (citing *Redd & Hill v. L&A Contracting Co.*, 151 So. 2d 205 (Miss. 1963)). UMB asserts there is no allegation Horne received any sort of payment or fee in connection with the delivery of the grain at issue to EGT. In sum, UMB contends that remand-related discovery is warranted to address these "gaps" in the allegations of the complaint.

**III.    Law and Analysis**

A party seeking removal on the basis of improper joinder of a non-diverse defendant bears a "heavy" burden to prove the joinder was improper. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). To meet its burden, the removing party must show an "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis*, 326 F.3d at 646-47.

---

[3] UMB also argues that even if a claim were stated in terms of a duty and breach, the complaint omits reference to an intervening event that UMB alleges prevents Horne's challenged conduct from being the proximate cause of the alleged injury. However, even if that argument could serve as a colorable basis for asserting improper joinder, it is irrelevant here since the discovery proposed of Horne does not address that alleged intervening act.

Once a motion to remand is filed, the remand issue may be resolved in one of two ways. *Smallwood,* 385 F.3d at 573. First, and most common, the court may analyze a motion to remand under a standard similar to that used to review motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id*. That is, the motion is analyzed with reference to well-pleaded allegations in the complaint to determine whether or not the plaintiff has stated a claim, and read leniently in favor of remand. *Smallwood,* 385 F.3d at 573; *Boone v. Citigroup, Inc.,* 416 F.3d 382, 388 (5th Cir. 2005). Alternatively, in those few cases where the plaintiff has stated a claim but misstated or omitted discrete facts that would determine the propriety of joinder, the district court may, in its discretion, conduct a summary inquiry. *Smallwood,* 385 F.3d at 573. In such cases, the district court may also allow limited remand-related discovery. *Id.; Boone,* 416 F.3d at 388. *See Hepner v. City of El Paso*, EP-07-CV-00021-KC, 2007 WL 9701318, at *1 (W.D. Tex. Apr. 3, 2007).

The Fifth Circuit has held that remand-related discovery "should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity." *Mississippi ex rel. Fitch v. Eli Lilly and Co.*, 2022 WL 2467723 at *2 (S.D. Miss. 2022), citing *Smallwood,* 385 F.3d at 574. "[M]otions for remand-related discovery should rarely be granted." *Johnson v. J.P. Morgan Chase & Co.*, 2:04-CV-216-P-A, 2004 WL 2370621, at *1 (N.D. Miss Oct. 7, 2004) (citing *Smallwood*, 385 F.3d at 574). Further, remand-related discovery is appropriate only where the party seeking the discovery shows that the proposed discovery is "necessary and sharply tailored to address the discrete and undisputed facts at issue." *Hinds County Miss. Bd. of Sup'rs v. Motorola, Inc.*, 2010 WL 445517, 3 (S.D. Miss. Feb. 1, 2010). A discrete and undisputed fact in this context is one "that easily can be disproved if not true" such as whether the plaintiff was actually treated by the in-state doctor named in the complaint, or

whether a party's residence has been correctly alleged. *Id.* (citing *Smallwood*, 385 F.3d at 574 n.12).

Remand-related discovery is thus limited to identifying the presence of these discrete and undisputed facts that would preclude recovery against the in-state defendant(s). As the Fifth Circuit in *Smallwood* cautioned, "[a]ttempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

As earlier noted, remand-related discovery is only permitted where it is necessary to demonstrate that, though a cause of action has been stated under a 12(b)(6) type analysis against a non-diverse defendant, the complaint omitted or misstated certain discrete undisputed facts that, if not misstated or omitted, would demonstrate that there is no plausible cause of action against the defendant. On the other hand, if the complaint fails to state a cause of action under a 12(b)(6) type analysis, there is no need for the defendant to conduct discovery. A complaint that fails to state a plausible cause of action against a non-diverse defendant under a 12(b)(6) type analysis is one to which the non-diverse defendant has been improperly joined *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 202 (5th Cir. 2016) (a non-diverse defendant has been improperly joined if the plaintiff has failed to state a claim against that defendant on which relief *may* be granted).

Indeed, in *Smallwood*, the court pointed out that it is only in those few cases where plaintiff *has stated a claim* but has omitted or misstated a discrete fact(s) in order to do so, that

limited discovery may be proper. In the instant case, however, it appears that UMB's argument is that the facts as alleged in the complaint do *not* state a plausible cause of action. *See* Memorandum in Support re Motion for Leave to Conduct Remand-Related Discovery:

> The Complaint fails to allege any connection between Horne and Plaintiffs. Given this lack of connection, Plaintiffs fail to allege facts that are essential to their fraud, negligence, and unjust enrichment claims.

[Doc. 39 at p. 3].

> Mississippi law identifies discrete facts that Plaintiffs must allege to state negligence, fraud, and equitable claims. Plaintiffs failed to allege these essential facts in the Complaint as well as their remand motion …. Plaintiffs' causes of action are not supported by existing factual allegations in the Complaint.

[Doc. 39 at p. 5].

> Here, the Complaint fails to plausibly plead a common law duty owed by Horne.

[Doc. 39 at p. 10].

> Here, Plaintiffs allege no direct connection with Horne—they do not identify a transaction of any sort between Horne and Plaintiffs. The absence of any transaction or connection between Horne and Plaintiffs is fatal to their claims because there was no duty flowing from Horne to Plaintiffs.

[Doc.39 at p. 11].

> Plaintiffs also failed to plead that Horne plausibly caused injuries to them. They did not allege they received or relied on any financial statements, and, in fact, the Complaint does not allege Plaintiffs received any information from Horne before delivering the grain at issue.

[Doc. 39 at p. 12].

> But Plaintiffs failed to plead any facts suggesting Horne ever made any statements to MDAC.

[Doc. 39 at p. 13].

In a similar vein UMB asserts that Plaintiffs did not and cannot plead what UMB contends are essential elements of the aiding and abetting claim (assuming—though UMB does not concede such a claim exists under MS law), such as that Plaintiffs relied on conduct by Horne when deciding to deliver the grain at issue. [Doc 39 at pp. 8-9].

Let me hasten to add that by no means am I commenting on whether a claim is or is not actually stated by Plaintiffs against Horne for purposes of determining whether there has been an improper joinder of the non-diverse defendant --that is the province of the District Judge, who currently has the issue before her. My point is, it is the defendant's duty to demonstrate, in order to conduct remand-related discovery, that the discovery sought is necessary and here Defendant UMB has failed to do so. On the contrary, UMB asserts no claim has been stated against Horne under a 12(b)(6) type analysis.

Moreover, even if this were not the case, it is clear that the array of discovery proposed by UMB here is not arguably tightly tethered to uncover discrete undisputed facts. Nor has Defendant UMB undertaken to explain how each discovery request is sharply tailored to demonstrate the existence of a fact which would necessarily make an otherwise properly stated claim unplausible. By way of example of the far-reaching and anything-but-tightly-tailored-and-sharply-drawn discovery requests (comprised of two sets of 22 interrogatories each, two sets of eight requests for production, and two deposition notices each covering 20 topics) are the following taken from the discovery proposed:

> **INSTRUCTIONS**: A. Where an interrogatory says "state all principal and material bases," provide all principal and material facts supporting or relating to the referenced contention, allegation, denial, or defense; identify all persons who have knowledge about those facts; and, identify all non-privileged documents supporting and/or relating to those facts.
> B. If you are asked to "identify" information in response to an interrogatory, your response should be complete and include:
> a. in the case of an individual, the identification should include the full name (including any maiden name, middle name, prior name, "nickname," or variation in spelling) and present or last known home or business address;
> b. in the case of an organization or entity, the identification should include the full name of the organization or entity and the present or last known address(es) of its place(s) of business;
> c. in the case of documents, the identification should include a complete description setting forth the title (if any), date, author, recipient, general subject matter, present location(s), and present custodian(s);

d. in the case of a transaction, occurrence, or instance of any behavior, the identification should include the date, persons involved, place of occurrence, and a complete description of all documents related thereto;

e. in the case of a communication, conversation, or discussion, the identification should include all individuals who participated, method of communication, the date, all statements made, and any documents reflecting or relating to the communication, conversation, or discussion; and

f. in the case of a fact (or all facts), the identification should include your basis for asserting that fact, all persons who have discoverable knowledge concerning that fact, and all documents relating to that fact, regardless of whether they support or contradict the fact.

…

N. "Document" means any medium upon, through or by which intelligence or information is recorded, in whole or in part, or from which intelligence or information may be retrieved. This includes, but is not limited to, any printed, typewritten, handwritten, word processed, recorded, or other graphic matter, or electronically-stored information of any kind or nature whatsoever, however produced or reproduced, whether sent or received or neither; any and all drafts, abstracts or copies bearing notations or markings not found on the original; and any and all writings, e-mails, drawings, graphs, charts, files, databases, correspondence, transcripts, contracts, agreements, letters, envelopes, purchase orders, memoranda, telegrams, notes, marginal notations, summaries, opinions, forms, catalogues, journals, fact sheets, credit files, credit reports, credit requests, records, articles, brochures, diaries, reports, calendars, interoffice communications, statements, jottings, announcements, authorizations, investigations, checks, check stubs, bank statements, financial statements, notices, accounts, account statements, messages, telephone messages, applications, minutes, papers, charts, day books, pleadings, notices, excerpts, clippings, sworn or unsworn testimony, interviews, examinations, depositions, affidavits, negotiable instruments, photographs, phone records and other data compilations, text messages, sms messages, tape or video recordings (and transcripts thereof), motion pictures and any carbon or photographic copies of any such material in your possession, custody or control, or formerly in your possession, custody or control, or to which you have or have had access if you do not have custody or control of the original. A draft or non-identical copy is a separate document within the meaning of this term.

**Interrogatories and Request for Production:**

**INTERROGATORY NO. 2:** Relating to the grain at issue, identify all persons who were involved in choosing a grain elevator for delivery, communicating with grain elevator(s), compiling the information supporting your decision to deliver the grain to Express Grain, evaluating Express Grain, communicating with Express Grain, or performing any work related to delivering the grain to Express Grain, and explain their involvement.

**INTERROGATORY NO. 4:** Did you communicate with MDAC, orally or in writing, related to Express Grain, at any time during the Relevant Period? If you answered

"yes," identify all such communications, including all individuals who participated in the communication, method of communication, the date, all statements made, and any documents reflecting or relating to the communication.

**INTERROGATORY NO. 8:** For any Horne Financial Statements identified in response to Interrogatory No. 6, do you contend that any information in those statements influenced your decision to deliver the grain at issue?...

**INTERROGATORY NO. 11:** For any Counterfeit Financial Statements identified in response to Interrogatory No. 9, do you contend that any information in those statements influenced your decision to deliver the grain at issue?...

**INTERROGATORY NO. 12:** Are you aware of any communications between Horne and MDAC related to Express Grain, which occurred during the Relevant Period? If you answered "yes," identify all such communications, including all individuals who participated in the communication, method of communication, the date, all statements made, and any documents reflecting or relating to the communication.

**INTERROGATORY NO. 13:** For the grain at issue, identify all efforts you undertook to investigate where you should deliver the grain during the Relevant Period. This interrogatory is limited to any investigation that occurred before you delivered the grain.

**REQUEST NO. 4:** All non-privileged documents referencing or reflecting communications between you and any third party related to the grain at issue and/or Express Grain's solvency, financial condition, financial statements, and/or ability to pay for grain. This request is limited to communications between you and third parties that occurred during the Relevant Period.

**REQUEST NO. 6:** All documents regarding Express Grain's solvency, financial condition, and/or ability to pay for grain, which you received or otherwise relied upon during the Relevant Period, including any financial statements, whether audited or unaudited, received from any source.

**REQUEST NO. 7:** All non-privileged documents relating to your efforts to investigate the creditworthiness of Express Grain prior to delivering the grain at issue.

**REQUEST NO. 8:** In the Bankruptcy Case, the bankruptcy court issued a Memorandum Opinion and Order Approving Joint Application to Compromise Controversy on May 2, 2022 (Bankruptcy Case Doc. 2785, referred to herein as "Bankruptcy Case Grain Settlement"). Produce all non-privileged documents and communications relating to the Bankruptcy Case Grain Settlement, including any documents and communications relating to your election under the terms of that Memorandum Opinion and Order.

**The Deposition Notices of Plaintiffs:**

**Each deposition notice lists as areas of inquiry the following expansive topics:**

1. Plaintiff's responses to written discovery in this action.

2. Documents produced by Plaintiff in connection with this action.

3. Factual basis relating to or supporting your contention that the federal court lacks jurisdiction.

4. Dates when you delivered the grain at issue to Express Grain.

5. Dates when you delivered grain to Express Grain on or after September 29, 2021.

6. Horne Financial Statements, including your knowledge of those financial statements, your request for those financial statements, the source(s) of the financial statements, your receipt, review, and reliance on those financial statements, and information contained in those financial statements.

7. Counterfeit Financial Statements, including your knowledge of those financial statements, your request for those financial statements, the source(s) of the financial statements, your receipt, review, and reliance on those financial statements, and information contained in those financial statements.

8. Communications between you and Horne related to Express Grain. This topic is limited to communications that occurred during the Relevant Period.

9. Communications between you and MDAC related to Express Grain. This topic is limited to communications that occurred during the Relevant Period.

10. Communications between you and any third party related to the grain at issue and/or Express Grain's solvency, financial condition, financial statements, and/or ability to pay for grain. This topic is limited to communications that occurred during the Relevant Period.

11. Communications between Horne and MDAC related to Express Grain, which occurred during the Relevant Period.

12. All documents regarding Express Grain's solvency, financial condition, and/or ability to pay for grain, which you received or otherwise relied upon during the Relevant Period, including any financial statements, whether audited or unaudited, received from any source.

13. Your efforts to investigate the creditworthiness, licensing, and/or financial condition of Express Grain and other grain elevators before delivering the grain at issue and/or delivering any other grain to Express Grain on or after September 29, 2021.

14. Your due diligence related to Express Grain and other grain elevators before delivering the grain at issue and/or delivering any other grain to Express Grain on or after September 29, 2021.

15. Horne's knowledge of and/or participation in Express Grain's alleged fraudulent representations to farmers and MDAC.

16. Your contention that you reasonably relied to your "detriment on Horne's conduct that enabled the woefully insolvent Express Grain to limp along, allowing [UMB] to seize more farmers' grain and allowing Horne to receive more fee payments," as alleged on page 16 of the Remand Motion.

17. Your contention that MDAC relied on conduct or omissions by Horne when deciding whether to issue, continue, or extend Express Grain's license, as alleged in paragraphs 35-40 of the Complaint.

18. Your election under the Memorandum Opinion and Order Approving Joint Application to Compromise Controversy issued on May 2, 2022, in the Bankruptcy Case (Bankruptcy Case Doc. 2785).

19. Your request for forfeiture of all money received by UMB through the conduct alleged in the Complaint and restitution of all "illegally obtained or ill-gotten funds and gains received" by UMB, including whether you seek forfeiture of any moneys or gains received by UMB in connection with the Bankruptcy Case.

20. For the grain at issue and any other grain delivered to Express Grain on or after September 29, 2021, all persons who were involved in choosing a grain elevator for delivery, communicating with grain elevator(s), compiling the information supporting your decision to deliver the grain to Express Grain, evaluating Express Grain, communicating with Express Grain, or performing any work related to delivering the grain to Express Grain.

In summary, I find that given Defendant UMB's argument that the complaint does not state a cause of action when examined under a 12(b)(6) type analysis, no remand-related discovery has been shown by them to be necessary as required in *Smallwood*. Moreover, even if some discovery were warranted under *Smallwood*, the proposed discovery is, on its face, not sharply tailored to discover discrete undisputed facts.

**THEREFORE, IT IS ORDERED** that Defendant UMB's motion to conduct remand-related discovery shall be and is hereby denied.

**SO ORDERED,** this 5th day of March, 2024.

/s/ Jane M. Virden
MAGISTRATE JUDGE JANE M. VIRDEN
