**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**LAWYER WHEELER, and**                              **PLAINTIFFS**
**ASHLEY SELMAN FARMS**
**PARTNERSHIP**

**V.**                                     **NO. 4:23-CV-243-DMB-JMV**

**UMB BANK, N.A.; and HORNE LLP**              **DEFENDANTS**

## OPINION AND ORDER

Following their removal of this case to federal court based on their assertions that this case is related to bankruptcy proceedings and that Horne LLP was improperly joined, UMB Bank, N.A., and Horne each move to dismiss the plaintiffs' claims against them. The plaintiffs move to remand the entire case to state court. Because UMB Bank and Horne fail to establish Horne's improper joinder for diversity jurisdiction and fail to establish bankruptcy jurisdiction, the motions to dismiss will be denied without prejudice, and this case will be remanded to the Circuit Court of Leflore County.

**I**
## Background and Procedural History

On September 29, 2021, Express Grain Terminals filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Mississippi. Doc. #4-1. On January 5, 2023, United States Bankruptcy Judge Selene D. Maddox entered an agreed order approving a settlement application filed by Express Grain and several of its creditors ("Settlement Order"). Doc. #4-5; Doc. #4-6 at 1–2. On March 24, 2023, Judge Maddox entered an agreed order confirming a plan of liquidation ("Confirmation Plan"). Doc. #4-9.

Approximately eight months later, on November 29, 2023, Lawyer Wheeler and Ashley Selman Farms Partnership filed a complaint in the Circuit Court of Leflore County, Mississippi, against UMB Bank, N.A., and Horne LLP asserting claims related to their delivery of grain to Express Grain for which they were never paid, specifically (1) aiding and abetting fraud by Express Grain; (2) intent, negligence, negligence per se, and gross negligence; (3) negligent misrepresentation; and (4) unjust enrichment. Doc. #2 at 17–21.

Asserting diversity jurisdiction and, alternatively, bankruptcy jurisdiction, UMB Bank removed the case to the United States District Court for the Northern District of Mississippi on December 29, 2023. Doc. #1. Later that day, Horne joined in the removal asserting the same grounds for removal but arguing bankruptcy jurisdiction as its primary basis for removal and diversity jurisdiction as its alternative bases. Doc. #4. Regarding diversity jurisdiction, the defendants allege that the amount in controversy exceeds $75,000; UMB Bank is a national bank with its main office located in Kansas City, Missouri;[1] the plaintiffs are citizens of Mississippi; and while the plaintiffs allege Horne is a citizen of Mississippi, it was improperly joined so its citizenship cannot defeat diversity jurisdiction. Doc. #1 at 7–8; *see* Doc. #4 at 11.

As to bankruptcy jurisdiction, the defendants argue that the plaintiffs' claims (1) "present issues related to their pending Proofs of Claims in the Bankruptcy Case;" (2) "assert a collateral attack to the Bankruptcy Court's approval of UMB's receipt of certain Disputed Grain Assets;" (3) "relate to the impact of their election forms;" and (4) "rely on allegations about events in the Bankruptcy Case." Doc. #1 at 18; *see* Doc. #4 at 6 (arguing case "is 'related to' [Express Grain's] title 11 bankruptcy proceedings … and 'arises from' those proceedings.").

---

[1] "A national bank may be considered a citizen of the State designated in its articles of association as its main office." *Nguyen v. Bank of Am., N.A.*, 539 Fed. App'x 325, 327 n.1 (5th Cir. 2013) (internal quotation marks and citation omitted).

On January 5, 2024, UMB Bank and Horne each filed a motion to dismiss the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Docs. #8, #10. Twelve days later, the plaintiffs filed a motion to remand the case to state court. Doc. #13. The motions to dismiss and the motion to remand are fully briefed. *See* Docs. #9, #11, #46, #48, #49 (motions to dismiss);[2] Docs. #14, #31, #33, #36 (motion to remand).

## II
## Diversity Jurisdiction

"Under the federal removal statute, a civil action may be removed from a state court to a federal court on the basis of diversity. This is so because the federal court has original subject matter jurisdiction over such cases." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016). Diversity jurisdiction requires that there be (1) complete diversity between the parties; and (2) an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Complete diversity exists when "all of the plaintiffs [are] citizens of different states than all of the defendants." *Williams v. Homeland Ins. Co.*, 18 F.4th 806, 812 (5th Cir. 2021) (citation omitted).

There is no dispute that complete diversity is lacking because both Horne and the plaintiffs are citizens of Mississippi. But the defendants assert diversity jurisdiction exists because Horne was improperly joined. Doc. #1 at 7–8; Doc. #4 at 11. In moving to remand, the plaintiffs argue that Horne was not fraudulently joined and that the defendants cannot establish there is no reasonable basis to predict they might recover from Horne. Doc. #14 at 13, 15.

### A. Improper Joinder

Although diversity jurisdiction typically requires complete diversity between the parties,

---

[2] On July 16, 2024, the Court granted UMB Bank's motion for leave to submit supplemental authority with respect to its pending motion to dismiss and the plaintiffs' pending motion to remand. Doc. #56.

the improper joinder doctrine represents a "narrow exception" to the rule. *Vaillancourt v. PNC Bank, Nat'l Ass'n*, 771 F.3d 843, 847 (5th Cir. 2014). Under the doctrine, "a district court is prohibited by statute from exercising jurisdiction over a suit in which any party … has been improperly or collusively joined to manufacture federal diversity jurisdiction." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (emphasis omitted).

In the Fifth Circuit, improper joinder may be established by showing "either that: (1) there was actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court." *Williams*, 18 F.4th at 812. The removing party bears the burden of establishing improper joinder. *Id*. Because neither UMB Bank nor Horne argues there was actual fraud in the pleading of jurisdictional facts, the Court only considers whether they "show that [the plaintiffs] cannot establish a cause of action" against Horne because "there is no possibility of recovery" against Horne. *Advanced Indicator & Mfg. v. Acadia Ins. Co.*, 50 F.4th 469, 473 (5th Cir. 2022).

To determine whether there is a possibility of recovery against Horne, "[t]he court should apply a Federal Rule of Civil Procedure 12(b)(6) standard; if the complaint is sufficient to state a claim, there is no improper joinder." *Cumpian v. Alcoa World Alumina, LLC*, 910 F.3d 216, 220 (5th Cir. 2018) (citation omitted). The Rule 12(b)(6) standard requires a complaint to "present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (cleaned up). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal

conclusions." *Id.* "Even if the defendant meets this burden, however, … there is no improper joinder if the basis for concluding that there can be no recovery from 'the in-state defendant necessarily compels the same result for the nonresident defendant.'" *Holder v. Abbott Laboratories, Inc.*, 444 F.3d 383, 387 (5th Cir. 2006) (quoting *Smallwood v. Ill. Central R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004)).

## B. Factual Allegations

Lawyer Wheeler was engaged "at all material times" in farming operations in Leflore County, Mississippi. Doc. #2 at 2. Ashley Selman Farms Partnership is "a Mississippi general partnership" also engaged in farming operations in Leflore County. *Id.* at 1–2.

Prior to entering bankruptcy in September 2021, Express Grain Terminals "operated one of the largest grain dealer operations … in the Mississippi Delta." *Id.* at 3. UMB Bank, N.A, "a national banking association" which "holds itself out as having particular expertise in agricultural finance" was Express Grain's primary lender. *Id.* at 2, 5. Horne, LLP, "an independent public auditor," served as Express Grain's auditor and accountant. *Id.* at 5, 7.

UMB Bank had "detailed knowledge" of Express Grain's financial condition because as Express Grain's lender, UMB Bank was entitled to "periodic financial reporting" from Express Grain and could inspect Express Grain's financial records at any time. *Id.* at 5. Horne "likewise possessed intimate knowledge" of Express Grain's financial status because it "had complete and unfettered access to all [Express Grain]'s … financial, regulatory, and banking records and correspondence" and it was responsible for producing financial statements for submission to UMB Bank and to the Mississippi Department of Agriculture and Commerce ("MDAC") which "monitor[s] the financial well-being of operators of grain dealers and warehouses." *Id.* at 4, 5. Both farmers and those engaged in agricultural finance "understood … that information provided

to the MDAC concerning grain dealers is relied upon by farmers in their specific transactions with grain dealers." *Id.* at 4. Farmers, including the plaintiffs, "rely heavily" on the MDAC's licensing and oversight to determine whether it is safe to do business with a grain dealer. *Id.*

For four of the five years leading up to its bankruptcy in 2021, Express Grain lost income and its current asset count steadily declined. *Id.* at 5–6. As of June 2020, Express Grain regularly "sold fictitious grain" to overstate its inventory position using warehouse receipts which transferred the title of grain and represented grain in storage. *Id.* at 7. Express Grain's Chief Executive Officer, John Coleman, created warehouse receipts for grain that did not exist and sold these receipts to "re-po lenders" before purchasing the receipts back at a lesser price "a short time later." *Id.* at 7–8.

As a result of Express Grain's "massive decline in income, year-over-year cash on hand, and current assets," Horne stated in its audited financial statements from 2018 to 2021[3] that "there was substantial doubt that [Express Grain] could continue as a going concern." *Id.* at 6. However, Horne "fail[ed] to swear and certify to MDAC" the warehouse receipt transactions Express Grain used to overstate its inventory. *Id.* at 11. And in 2018, Coleman began "prepar[ing] counterfeit Horne-audited financial statements for the MDAC" by removing Horne's going concern statement from Express Grain's submissions to the MDAC. *Id.* at 5, 6.

Express Grain continued to receive a warehouse license, even though grain dealers that are "not sufficiently solvent or that present[] substantial financial risk to … farmers" typically have their licenses revoked by the MDAC. *Id.* at 4, 6. Horne never performed an investigation as to

---

[3] Although Horne and Express Grain did not have an engagement letter or retainer contract addressing business transactions after December 31, 2020, the engagement letter contract between Horne and Express Grain dated April 1, 2021, "allowed Horne unlimited and complete access to [Express Grain]'s financial records sufficient to perform the six month 2020 audit as well as access to all of [Express Grain]'s records after December 31, 2020 through September 29, 2021." Doc. #2 at 10. Horne completed the audit on August 30, 2021, and the audit "addressed 'subsequent events' through" September 29, 2021. *Id.*

why Express Grain continued to receive a warehouse license despite its "going concern" statement, and Horne never withdrew as auditor or informed the MDAC of the "material weaknesses in [Express Grain]'s internal inventory controls." *Id.* at 11, 19.

Beginning on December 17, 2020, "[w]ith Horne's enablement and assistance," Express Grain and UMB Bank refinanced their loan agreement five times during a six-month period. *Id.* at 12. In that month, the MDAC received a complaint from a farmer who had not been paid by Express Grain. *Id.* When the MDAC investigator contacted Express Grain, Express Grain stated that it "was simply refinancing debts in the ordinary course of business" and invited the investigator to contact UMB Bank. *Id.* at 13. UMB Bank officer Mark Reinert also assured the investigator that Express Grain's loans were being refinanced as part of the ordinary course of business. *Id.* Based on Express Grain's and UMB Bank's representations, the MDAC allowed Express Grain to remain open. *Id.* By June 30, 2021, Express Grain's loan balance was $40 million instead of the $25 million balance required in the original agreement. *Id.* at 12.

In 2021, Express Grain solicited business from farmers by offering "above market premiums and paint[ing] a positive picture of its financial stability, with rosy forecasts throughout" the year, including a spring 2021 update "tout[ing] expansion to [its] soybean processing plant;" "high market prices for corn and soybeans, and demand for soybeans;" and "its own financial condition." *Id.* at 3–4, 13–14. Express Grain sent agents and employees to the farmers to enter contracts based on false statements about its financial condition and promises of higher rates per bushel if the farmers brought their grain in early. *Id.* at 4. Express Grain also used e-mail and radio advertisements to solicit business. *Id.* On September 28, 2021, the day before filing for bankruptcy, Express Grain e-mailed its customers to "reassure[] them of the solvency and its ability to pay for grain deliveries," stating, "we are in good shape financially. We have funding in

place from multiple sources to make sure everyone gets paid on time." *Id.* at 14 (emphasis omitted).

In August and September of 2021, Selman Farms "sold and/or delivered approximately 196,411.25 bushels of corn and 125,730.13 bushels of soybeans to Express Grain." *Id.* at 2. In September 2021, Wheeler "sold and/or delivered for storage" approximately 6,583.21 bushels of soybeans to Express Grain. *Id.* During a "typical" grain purchase by Express Grain, title of the grain was transferred to Express Grain upon delivery of the grain to its grain elevator. *Id.* at 3. After weighing, inspecting, and unloading the grain, Express Grain would deliver payment by check to the farm or farmer who delivered the grain. *Id.* During harvest time, however, Express Grain and farmers usually agreed to delay payment. *Id.*

Neither Wheeler nor Selman Farms were ever paid for their August and September 2021 sales and/or deliveries to Express Grain. *Id.* at 2. Express Grain filed for bankruptcy on September 29, 2021, following UMB Bank's filing of a receivership complaint. *Id.* at 16.

## C. Analysis

In moving to remand, the plaintiffs argue that (1) the defendants cannot establish fraudulent joinder because UMB Bank alleges they "do not have a viable case against anyone," not that Horne "is a sham defendant," and an attack on the merits of the case that would equally dispose of all defendants may not be considered in the context of improper joinder; and (2) the defendants cannot show that there is "no reasonable basis" to predict that they "might" recover from Horne because "any such analysis must be done in the context of Rule 8's notice pleading standard." Doc. #14 at 14, 15.

UMB Bank responds that (1) Rule 12(b)(6)—not Rule 8—applies to questions of improper joinder based on failure to state a claim; (2) under the Rule 12(b)(6) standard, it is appropriate for

the Court to consider the merits of the plaintiffs' claims; and (3) the "merits versus jurisdiction issue" is a "narrow exception" to improper joinder that applies when a non-resident defendant's showing that there is no reasonable basis for recovery under state law against the in-state defendant "equally disposes of all defendants."[4]  Doc. #31 at 8–9.  Horne responds that the plaintiffs "misrepresent the standard for fraudulent joinder" because "the Fifth Circuit 'has … noted the similarity of the test for fraudulent joinder and the test for a Rule 12(b)(6) motion alleging failure to state a claim;'" and it "should not be a defendant in this case because there is no arguably reasonable basis for a court to conclude [it] is liable to Plaintiffs."  Doc. #33 at 14 (citation omitted).

The plaintiffs reply that (1) the defendants have, "at most, … suggested there are viable defenses to some of the claims asserted against Horne, which is not enough to establish fraudulent joinder" because the defendants assert the same defenses; and (2) even if the Court considered the merits of the plaintiffs' claims, "it cannot be said there is 'no reasonable basis' to 'predict that the plaintiff might be able to recover against an in-state defendant.'"  Doc. #36 at 7–9 (citation omitted).

### 1.  Pleading standard

As explained above, district courts apply the Rule 12(b)(6) standard to assess improper joinder challenges based on failure to state a claim.  Though the plaintiffs cite *Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F. Supp. 2d 835, 840 (S.D. Miss. 2011), for their argument that Rule 8 notice pleading is the appropriate standard, Doc. #14 at 15, the district court in *Harried* applied the 12(b)(6) standard when ruling on the motion to remand before it.  813 F. Supp. 2d at

---

[4] UMB Bank also argues that as a removing party, it need only establish either fraudulent joinder or the plaintiff's failure to state a plausible claim against Horne.  Doc. #31 at 7–8.  The Court agrees.  *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (fraudulent joinder and failure to state a claim are "option[s]" for establishing improper joinder).

840. So the plaintiffs' argument that the Court should analyze its complaint pursuant to Rule 8's notice pleading standard is without merit.

### 2. Claims against Horne

#### a. *Aiding and Abetting Fraud*

Although it appears Mississippi courts have not recognized the claim of aiding and abetting fraud,[5] the plaintiffs argue there is a reasonable basis to predict they could recover against Horne for such claim because the "Southern District [of Mississippi] has (at least) twice predicted that the Mississippi Supreme Court would recognize that cause of action." Doc. #14 at 15 (citing *Mills v. Trustmark Nat'l Bank*, No. 3:19-cv-941, 2021 WL 785328, at *6 (S.D. Miss. Mar. 1, 2021); *Dale*, 203 F. Supp. 2d at 700 n.5).

UMB Bank argues in its response that the plaintiffs' claim for aiding and abetting fraud fails because the complaint does not allege facts establishing Horne owed a duty to the plaintiffs. Doc. #31 at 10–11. Horne responds that the plaintiffs cannot state a claim for aiding abetting fraud because federal courts sitting in diversity may not create new causes of action not yet recognized by state courts. Doc. #33 at 15–16.

The plaintiffs reply that "a pre-existing duty of care is not an element of a claim of aiding and abetting fraud;" and Horne's argument that federal courts cannot make predictions about the viability of a state law cause of action not yet recognized in state court is erroneous and irrelevant to whether the claim is viable in state court. Doc. #36 at 7–8.

In the absence of a decision from the state's highest court on an issue of state law, "federal courts are required to make an *Erie* guess and determine, in their best judgment how the State's

---

[5] *See Dale v. Ala. Acquisitions, Inc.*, 203 F. Supp. 2d 694, 700 (S.D. Miss. 2002) ("[T]he Mississippi Supreme Court has not expressly recognized the tort of aiding and abetting fraud."); *Dickens v. A-1 Parts & Repair, Inc.*, No. 1:18-cv-162, 2018 WL 5726206, at *3 (analyzing aiding and abetting fraud claim on Rule 12(b)(6) motion "[a]ssuming that Mississippi would recognize" such claim).

highest court would resolve the issue." *Jatera Corp. v. US Bank Nat'l Ass'n*, 917 F.3d 831, 835 (5th Cir. 2019) (cleaned up). However, a federal district court is "preclude[d] … from applying an *Erie* analysis in determining a fraudulent joinder issue" because "any ambiguities of state law … must be resolved in the plaintiff's favor." *Fairley v. ESPN, Inc.*, 879 F. Supp. 2d 552, 556 (S.D. Miss. 2012). Consequently, this Court may not conclude there is no reasonable possibility of recovery against Horne for aiding and abetting fraud based on ambiguities in Mississippi law as to whether aiding and abetting fraud is a cognizable claim or whether establishing a duty is a required element of such claim. *See Rico v. Flores*, 481 F.3d 234, 243–44 (5th Cir. 2007) (district court's improper joinder ruling erroneous because it resolved ambiguities in state law against plaintiffs); *see also Fairley*, 870 F. Supp. 2d. at 556 ("court must conclude that defendants cannot establish improper joinder" where "Mississippi law is undeveloped" as to elements of claim alleged). So the defendants fail to establish improper joinder based on the aiding and abetting fraud claim.

### b. *Other Claims*

The plaintiffs also assert claims against Horne for negligence, gross negligence, negligence per se, negligent misrepresentation, intentional misrepresentation, and unjust enrichment. Doc. #2 at 19–21. But because the defendants have not established Horne was improperly joined with respect to the plaintiffs' claim for aiding and abetting fraud, the Court need not analyze the plaintiffs' other claims for the purpose of the improper joinder issue. *See Kessler v. Allstate Fire & Cas. Ins. Co.*, 541 F. Supp. 3d 718, 732 (N.D. Tex. 2021) (court need not analyze viability of plaintiff's other causes of action if plaintiff could prevail on at least one claim); *accord Gray v. Beverley Enterprises-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004) ("[Section] 1441's holistic approach to removal mandates that the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire

case to state court.").

### D.  Summary

Because the defendants fail to establish that the plaintiffs have no reasonable possibility of recovery against Horne for aiding and abetting fraud, they fail to show Horne was improperly joined, which means this Court lacks diversity jurisdiction.

### III
### Bankruptcy Jurisdiction

A case may be removed to the federal district court where the state action is pending "if such district court has jurisdiction of such claim or cause of action under [28 U.S.C. §] 1334." 28 U.S.C. § 1452(a).  Under § 1334(a), district courts "have original and exclusive jurisdiction of all cases under title 11," except as provided by § 1334(b). Section 1334(b) provides that district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  Section 1334(e)(1) confers exclusive jurisdiction on district courts "of all the property … of the debtor …, and of property of the estate" where "a case under title 11 is commenced or is pending."  However, under § 1334(c)(2), where the only basis for jurisdiction is that a state law claim is related to a bankruptcy case, the district court must abstain. And pursuant to § 1334(c)(1), a district court may, in its discretion, abstain from adjudicating a claim that arises under, arises in, or is related to a bankruptcy case.

In removing this case, the defendants argue the Court has jurisdiction under § 1334(a), § 1334(b) and § 1334(e).[6]  Doc. #1 at 12–17; Doc. #4 at 6–10.  In moving to remand, the plaintiffs argue this case does not arise under, arise in, and is not related to Express Grain's bankruptcy proceedings.  Doc. #14 at 5–13.  Alternatively, the plaintiffs argue the Court should abstain from

---

[6] Though neither UMB Bank's notice of removal, nor Horne' joinder expressly identify § 1334(e) as a basis for removal, both argue the plaintiffs' claims are property of Express Grain's estate. Doc. #1 at 15; Doc. #4 at 9.

adjudication pursuant to § 1334(c).  *Id.* at 17–22.

## A.  § 1334(a)

UMB Bank contends in its removal notice that the plaintiffs' claims for forfeiture and restitution of "ill-gotten funds and gains" constitute a collateral attack on the bankruptcy court's Settlement Order which authorized disbursement of Express Grain's grain proceeds to it.  Doc. #1 at 14.  Citing *Phx. Elec. Contracting, Inc. v. Lovece*, No. 93civ4340, 1993 WL 512917, at *3 (S.D.N.Y. Dec. 9, 1993), UMB Bank argues that the plaintiffs' claims raise the question of preemption by federal bankruptcy law, thus conferring jurisdiction under § 1334(a).  Doc. #1 at 14.  Horne's joinder to the notice of removal argues bankruptcy jurisdiction exists under § 1334(a) because this case "involves disputes concerning core proceedings under 28 U.S.C. § 157(b)."  Doc. #4 at 6.

The plaintiffs' motion to remand does not address the defendants' arguments that the Court has jurisdiction under § 1334(a).  And the defendants do not raise these arguments in response to the plaintiffs' motion to remand.[7]  But the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, (2006)).

Section 1334(a)'s "'[c]ases under title 11' refers to the bankruptcy case itself, with all other proceedings emanating from the case either 'arising under,' 'arising in,' or 'related to.'"  *Gilbane Bldg. Co. v. Air Sys.*, 337 B.R. 864, 870 (Bankr. S.D. Tex. 2006); *accord In re Chesapeake Corp.*, 70 F.4th 273, 281 (5th Cir. 2023).  The defendants do not cite, nor does there appear to be, any

---

[7] *See generally* Docs. #31, #33.  The defendants appear to repurpose their § 1334(a) removal arguments in response to the motion to remand by contending that the Court has "arising in" jurisdiction under § 1334(b).  *See* Doc. #31 at 26 (arguing that "arising in" jurisdiction exists because the complaint is a collateral attack on the bankruptcy court order approving the settlement agreement); Doc. #33 at 9 (arguing the plaintiffs' claims "confer arising in jurisdiction on this Court [because] approval of the settlement was core proceeding.").

Fifth Circuit authority holding that a district court has jurisdiction under § 1334(a) where a plaintiff's state law claims could lead to the recovery of funds disbursed to a defendant pursuant to a settlement agreement approved by a bankruptcy court. Even if *Lovece* was binding on this Court,[8] it would not aid UMB Bank's argument because *Lovece* declined to reach the issue of whether federal bankruptcy law preempted the state law claims there since the defendant argued § 1334(a) and § 1334(b) as alternative jurisdictional bases and the plaintiff had not demonstrated lack of jurisdiction under § 1334(b). 1993 WL 512917, at *3. And Horne's argument that the Court has jurisdiction pursuant to § 1334(a) because this case involves core proceedings fails because the category of "cases under title 11" refers to the bankruptcy petition, *In re Chesapeake Corp.*, 70 F.4th at 281, which the plaintiffs' suit is not. Accordingly, the Court concludes it does not have jurisdiction over this case pursuant to § 1334(a).

## B. § 1334(e)

In moving to remand, the plaintiffs argue this case is not the property of Express Grain's estate because the alleged injury "is the loss derived from delivering a crop that Express Grain never paid for," which is not an injury "that could plausibly belong to Express Grain;" and "the fact that a large class of creditors may share the same claim does not … cause the claim to become the property of the debtor." Doc. #14 at 11. In response, Horne argues that the plaintiffs' claims belong to Express Grain's estate because the plaintiffs' injury "is merely derivative of [its] relationship with Debtor [Express Grain]" since the plaintiffs "assert a breach of a duty that was never owed to them," and "any one of Debtor [Express Grain]'s creditors could make [the] same

---

[8] *Flores v. FS Blines, LLC*, 73 F.4th 356, 364 n.4 (5th Cir. 2023) ("[a] decision of a federal district court … is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)).

argument against it."[9]  Doc. #33 at 10–11.  The plaintiffs reply by reiterating that the injury they allege could not plausibly belong to Express Grain, and argue that whether Horne owed a duty to them "is a merits question relating to [their] negligence claim and has no bearing on who *owns* any claims."  Doc. #36 at 7 (emphasis in original).

Section 1334(e) provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction … of property of the [debtor]'s estate."  28 U.S.C. § 1334(e)(1).  Under the Bankruptcy Code, "all legal or equitable interests of the debtor in property as of the commencement of the case" are part of the property of the estate.  11 U.S.C. § 541(a)(1).  The legal and equitable interests of the debtor include "'rights of action' such as claims based on state or federal law."  *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) (citations omitted).

To determine whether a legal claim belongs to the estate of a bankruptcy debtor, courts engage in a "narrow" inquiry to consider "whether under state law [the debtor] could have raised the claims as of the commencement of the bankruptcy" and "the nature of the injury for which relief is sought."  *Id.* at 585.  A legal claim belongs to the debtor's estate if the injury for which relief is sought is "merely derivative" of an injury to the debtor or a "generalized grievance," and the debtor could have brought the claim in state court at the commencement of the bankruptcy case.  *Id.* at 585–86, 588.  A court's inquiry in analyzing such is limited to the "facial allegations of the complaint."  *Id.* at 583.

The complaint here alleges the plaintiffs were injured because they were not paid for grain

---

[9] UMB Bank did not raise any § 1334(e) arguments in response to the motion to remand.  But in the removal notice, it argues that the "Bankruptcy Court has exclusive jurisdiction over the grain and grain proceeds at issue" pursuant to § 1334(e) "because [Express Grain] had title and/or possessory interest to said grain."  Doc. #1 at 15.  However, "a bankruptcy court loses jurisdiction over assets once they are transferred from the bankruptcy estate."  *In re Skuna River Lumber, LLC*, 564 F.3d 353, 355 (5th Cir. 2009) (citation omitted).  The grain proceeds at issue were transferred to UMB Bank pursuant to the Settlement Order, Doc. #1 at 14, so § 1334(e) does not confer jurisdiction on that basis.

delivered to Express Grain based on claims that Horne and UMB Bank (1) aided and abetted fraud by Express Grain by providing accounting and banking services that permitted Express Grain to solicit grain deliveries; (2) negligently misrepresented and failed to disclose Express Grain's financial status; and (3) were unjustly enriched because as a result of misrepresentations "designed to perpetuate [Express Grain's] existence and thereby induce Plaintiffs' reliance upon its financial stability," they continued to collect fees for their services and ultimately seized the unpaid grain. Doc. #2 at 17–21. To the extent the plaintiffs' aiding and abetting fraud claim seeks to hold the defendants liable for assisting Express Grain in soliciting grain deliveries, the claim does not allege a derivative injury because it does not allege Express Grain was harmed at all. *See, e.g., In re Seven Seas Petroleum, Inc.*, 522 F.3d at 586 (aiding and abetting fraud claim under Texas law alleges direct injury to plaintiffs that is not derivative of injury to debtor). Similarly, the plaintiffs' negligence and negligent misrepresentation claims do not allege derivative injuries because they assert that the plaintiffs—not Express Grain—relied on the defendants' misrepresentations and omissions to their detriment in continuing to deliver grain to Express Grain. The unjust enrichment claim also does not allege a derivative injury because the plaintiffs assert that the defendants seized the plaintiffs' unpaid grain and continued to receive fees for their services as a result of inducing the plaintiffs to rely on Express Grain's financial stability. *See id.* at 587 ("inducement allegations" by bondholders allege injury that is not merely derivative even where debtor is also harmed by defendants' conduct). And though Horne argues that these claims belong to Express Grain's estate because other farmers can bring similar claims, "[i]t is 'actions by individual creditors asserting a generalized injury to the debtor's estate, which ultimately affects all creditors,' that can be said to raise a 'generalized grievance,' not actions by creditors that are merely common to a number of them." *Id.* at 589 (alterations omitted) (quoting *In re Schimmelpenninck*, 183 F.3d 347, 360 (5th

Cir. 1999)).  So the Court concludes that it does not have jurisdiction over this case pursuant to §
1334(e).

## C.  § 1334(b)

Under § 1334(b), district courts "have original but not exclusive jurisdiction of all civil
proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. §
1334(b).  Since the defendants do not argue that this case arises under Title 11, the Court will
consider only whether this case "arises in" or is "related to" cases under Title 11.

### 1.  "Arising in" jurisdiction

In seeking remand, the plaintiffs argue this case "does not 'arise in' a bankruptcy case"
because they assert only state law causes of action and "do not ask any court to enforce or revise,
nor are [they] attempting to evade, any determination made by the Bankruptcy Court."  Doc. #14
at 6–7.  They also argue that the possibility that a state court will interpret the bankruptcy court
order "does not somehow create federal jurisdiction" because state courts are "more than capable
of interpreting bankruptcy court orders."  *Id.*

UMB Bank responds that whether a "claim is based on state law is not dispositive as to
whether there is bankruptcy jurisdiction."  Doc. #31 at 29 (internal quotation marks and citation
omitted).  Although the plaintiffs assert state law claims, UMB Bank argues that "arising in"
jurisdiction exists because (1) the plaintiffs' "requests for restitution and forfeiture are attempts to
require [it] to turn over the funds it received pursuant to the Bankruptcy Court's approved
settlement;" and (2) "this case will require an analysis of … waivers executed in connection with
the settlement in the Bankruptcy Case, which disclaimed any interests in the grain and grain
proceeds."  *Id.* at 27–28.[10]  Similarly, Horne responds that the Court has "arising in" jurisdiction

---

[10] UMB Bank also responds that since federal courts can also consider the bankruptcy court orders' res judicata effect,
the plaintiffs incorrectly argue there is no arising in jurisdiction because state courts can consider any res judicata

because the plaintiffs' request for forfeiture and restitution "is an attack on the Bankruptcy Court's [Settlement Order], which authorized disbursement of grain proceeds to UMB Bank," and "resolution of these claims requires the Court to interpret the … Settlement Order and [Confirmation] Plan." Doc. #33 at 9, 18.

The plaintiffs reply that (1) the complaint does not attack the bankruptcy court's orders by seeking to "recover tort damages from Defendants based on their own conduct" and "assert[ing] a generic plea for restitution;" (2) "[a]ny funds UMB received from Express Grain have been long since commingled with other cash on UMB's balance sheet;" and (3) they "seek fungible dollars … not an *in rem* proceeding … to recover funds of the debtor or particular funds distributed to UMB." Doc. #36 at 2–3 (emphasis in original).

Also called "core" matters, claims "arise in" a bankruptcy proceeding if "by their nature, [they] could only arise in the context of a bankruptcy case and concern the administration of the estate." *In re Brook Mays Music Co.*, 363 B.R. 801, 807 (Bankr. N.D. Tex. 2007); *cf. In re OCA*, 551 F.3d 359, 367–68 (5th Cir. 2008) ("proceeding is non-core … [where it] is 'simply a state contract action that, had there been no bankruptcy, could have proceeded in state court.'") (quoting *In re Wood*, 825 F.2d at 97). While a claim's state law origin is not dispositive of whether it arises in bankruptcy,[11] "[c]laims whose genesis is unrelated to the bankruptcy case … and are brought under non-bankruptcy law, do not arise … in a case under Title 11." *WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 609–10 (S.D. Tex. 1999) (citation omitted); *accord In re CEI Roofing, Inc.*, 315 B.R. 61, 65 (Bankr. N.D. Tex. 2004) ("[I]f a claim

---

defense. Doc. #31 at 29–30. But the plaintiffs do not make this argument. The plaintiffs argue that state courts are well suited to interpret bankruptcy court orders, and in a footnote, they state "[s]imilarly, state courts … routinely consider res judicata effect of state court decisions." *Id.* at 7 n.6.

[11] *In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999).

could be brought pre-petition, it cannot be said to 'arise in' a case under title 11."). "Cases dealing with both pre- and post-petition conduct … [g]enerally … are considered non-core proceedings unless they involve significant and repeated post-petition activity." *In re Keener*, No. 3-44804, 2008 WL 912933, at *2 (citing *WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 611).

This case involves both pre-petition and post-petition conduct because the alleged misrepresentations and omissions occurred before Express Grain's September 29 bankruptcy petition, and the alleged seizure of the plaintiffs' grain occurred during the bankruptcy proceedings pursuant to the Settlement Order. The allegations regarding the plaintiffs' delivery of grain during the 2021 harvest season are not clear as to how much of the grain, if any, was delivered without payment after Express Grain filed its petition for bankruptcy relief.[12] And though the alleged seizure of the plaintiffs' grain occurred during the bankruptcy proceedings—and this allegation could establish damages for some of the plaintiffs' claims—the existence of a post-petition damages element based on pre-petition conduct does not create "arising in" jurisdiction. *See WRT Creditors Liquidation Tr.*, 75 F. Supp. 2d at 610–11 ("the assertion of one element of damages resulting from pre-petition contracts, pre-petition duties, and pre-petition breaches, that accrued post-petition, in the bankruptcy context, does not make every cause of action a 'core'

---

[12] UMB Bank contends the Court may take judicial notice of Wheeler's assertion of interest form and Express Grain's "Monthly Operating Report," which it argues show that "certain bushels of soybeans were delivered post-petition" and that Express Grain made a payment to Ashley Selman Farms for grain delivered after Express Grain filed its bankruptcy petition. Doc. #31 at 15 n.6 (citation and internal quotation marks omitted). "Whether an action should be remanded to state court must be resolved … with reference to the complaint, the notice of removal, and the state-court record at the time the notice of removal was filed." 14C *Fed. Prac. & Proc. Juris.* § 3739 (Rev. 4th ed.). While "a court may take judicial notice of a document filed in another court," it may do so only "to establish the fact of such litigation and related filings." *Wooley v. Haynes & Boone, LLP*, 480 F. App'x 327, 328 (5th Cir. 2012). Even if the Court considered such filings, they do not demonstrate significant post-petition activity. Wheeler's assertion of interest form indicates that he delivered 1,194.52 bushels of soybeans post-petition, Doc. #31-1 at 2, which is a fraction of the 6,583.21 bushels of soybeans the plaintiffs allege Wheeler delivered without payment "in September of 2021," Doc. #2 at 2. The portion of the "Monthly Operating Report" that UMB Bank cites shows that Express Grain paid Ashley Selman Farms $21,450.20 on November 19, 2021, Doc. #31-2 at PageID 1200, but it does not indicate whether the payment was for a grain delivery made post-petition or, assuming the grain was delivered post-petition, whether the post-petition grain delivery accounts for all the grain the plaintiffs allege Ashley Selman Farms delivered to Express Grain "in August and September of 2021" without payment. Doc. #2 at 2.

proceeding.").  So the Court does not find that there is "significant … post-petition activity" such that the plaintiffs' claims "arise in" bankruptcy.  *In re Keener*, 2008 WL 912933, at *2.

As to UMB Bank's argument that the resolution of the plaintiffs' claims might require interpretation of the Settlement Order, this possibility also does not establish "arising in" jurisdiction.  *See In re Wesco Aircraft Holdings, Inc.*, No. 23-90611, 2024 WL 156211, at *18 (Bankr. S.D. Tex. Jan. 14, 2024) ("It is irrelevant whether a determination of claims may in some way lead to the determination of other issues concerning the administration of the estate. This does not convert otherwise state-law based … claims … into core proceedings.") (citing *In re Wood*, 825 F.2d at 98).

For these reasons, the Court concludes that it does not have "arising in" jurisdiction over the plaintiffs' claims because the claims are not based on significant post-petition conduct.

### 2.  "Related to" jurisdiction

The plaintiffs argue that this case does not relate to Express Grain's bankruptcy proceedings because (1) it is a post-confirmation case; (2)  Judge Maddox previously determined that a similar pending action, *Island Farms, LLC et al. v. UMB Bank, N.A.*, No. 3:21-cv-721 (S.D. Miss. Nov. 8, 2021), is not related to Express Grain's bankruptcy proceedings; (3) the outcome cannot impact the bankruptcy estate because the farmers' claims against the grain assets held by Express Grain's Bankruptcy Estate "have long been resolved by settlements approved by the Bankruptcy Court" and "to the extent that any of the Plaintiffs … remain general unsecured creditors, those claims are worthless;" and (4) the claims against Horne will not have an indemnity effect on the Express Grain bankruptcy estate because (a) their allegations "are outside the scope" of the indemnity provisions in Horne's engagement letters with Express Grain, (b) Horne's indemnity claim was waived because it was not filed by the March 28, 2022 deadline, (c) "there is

no indemnity clause in the … engagement letter for the relevant year," (d) "Horne's indemnity claim is prohibited under Section 502(E)(1)(B) of the Bankruptcy Code," and (e) "Horne's indemnity claim is worthless" since "there is no possibility that general unsecured creditors will recover anything." Doc. #14 at 7–13.

UMB Bank responds that there is related to jurisdiction for the same reasons it argues there is arising in jurisdiction, and because the plaintiffs' argument that claims by unsecured creditors are worthless is "premature." Doc. #31 at 31. Horne responds that "[t]he indemnification provisions confer 'related to' jurisdiction" because (1) Judge Maddox's determination regarding *Island Farms, LLC*, was merely dictum; (2) "litigation between third parties that may give rise to indemnity claims against the debtor creates [a] 'conceivable effect on the bankruptcy estate;'" (3) Express Grain "explicitly agreed to indemnify [it] for liabilities arising from misrepresentations by members of [Express Grain's] management" and the argument that it waived its indemnity rights has no legal support; and (4) "[e]ven if … the contractual provisions do not hold, Horne's common law indemnification claims against [Express Grain] confer 'related to' jurisdiction." Doc. #33 at 4–9.

In reply, the plaintiffs argue that Judge Maddox's determination was not dictum, and "[n]o unsecured creditor will recover anything in the *Express Grain* Bankruptcy" because "proceeds have already been distributed to secured creditors … and any remaining distributions are to be *de minimis*," "the liquidating trustee objected to [their] claims," and "an agreed order on the objection disallowing the claims is forthcoming." Doc. #36 at 5. They also repeat their initial arguments regarding Horne's indemnification claim, adding that it also fails because Horne "does not dispute its claim was filed nearly one year after the claims deadline," and it "is a contingent claim and there is no possibility general unsecured creditors will recover anything." *Id.* at 6.

"A proceeding relates to a bankruptcy case if '[its] outcome … could conceivably have any effect' on the debtor's estate." *In re Genon Mid-Atlantic Dev., LLC*, 42 F.4th 523, 534 (5th Cir. 2022) (quoting *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999)). Although "related to" jurisdiction is typically broad, there is a "narrower, more exacting standard for post-confirmation jurisdiction." *In re Chesapeake Energy Corp.*, 70 F.4th 273, 281 (5th Cir. 2023). "Confirmation dissolves the debtor's estate and, with it, bankruptcy jurisdiction, except 'for matters pertaining to the implementation or execution of the plan.'" *In re Genon Mid-Atlantic Dev., LLC*, 42 F.4th at 534.

To determine whether a proceeding pertains to the implementation or execution of the reorganization plan, the Fifth Circuit considers the following factors a "useful heuristic:" (1) whether "the claims at issue 'principally deal[] with post-confirmation relations between the parties;'" (2) whether "there [is] 'antagonism or [a] claim pending between the parties'" before confirmation; and (3) whether "any 'facts or law deriving from the reorganization or the plan [are] necessary to the claim.'" *In re Chesapeake Energy Corp.*, 70 F.4th at 283 (quoting *In re Genon Mid-Atlantic Dev., LLC*, 42 F.4th at 534; *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 391 (5th Cir. 2001)).

The plaintiffs filed their state law complaint on November 29, 2023—approximately eight months after the Confirmation Plan was entered on March 24, 2023. Doc. #4-9. Thus, to determine whether there is related to jurisdiction over the plaintiffs' claims, the question is not whether the claims could have a conceivable effect on the bankruptcy estate but whether the claims pertain to the implementation and execution of the Confirmation Plan. *In re Genon Mid-Atlantic Dev., LLC*, 42 F.4th at 534.

Regarding the first factor in this inquiry—though the plaintiffs' claims are based on conduct by the defendants that the plaintiffs allege preceded the bankruptcy itself, and on UMB

Bank's receipt of grain proceeds before the entry of the Confirmation Plan[13]—the plaintiffs' claims principally concern post-confirmation relations between the parties because the plaintiffs' proofs of claims were either resolved by settlement[14] or disallowed.[15] *See In re Chesapeake Energy Corp.*, 70 F.4th at 283 (claims seeking to enforce pre-petition class action settlements principally deal with post-confirmation relations where "debtor's reorganization plan discharged the non-filing leaseholders' pre-confirmation monetary claims against Chesapeake"). So the first factor weighs against related to jurisdiction. *See In re UPD Global Res., Inc.*, No. 15-2488, 2016 LEXIS 95115, at *24–31 (S.D. Tex. July 21, 2016) (where claims principally concern post-confirmation relations, first factor weighs against existence of post-confirmation bankruptcy jurisdiction).

The second factor weighs in favor of related to jurisdiction because while the plaintiffs initiated their state law claims after the entry of the Confirmation Plan, their claims are based on pre-petition conduct and could have been brought before Express Grain filed for bankruptcy. *See Schmidt v. Nordlicht*, No. 16–3614, 2017 WL 526017, at *3 (S.D. Tex. Feb. 9, 2017) ("[A]ntagonism existed in the relevant sense; the defendant's alleged wrongdoing harmed the company prior to the bankruptcy, and the company's cause of action appears to have accrued before the bankruptcy as well.").

---

[13] According to the removal notice, the Settlement Order authorized distributions of the Disputed Grain Asset Pool to multiple parties, including UMB Bank on May 2, 2022. Doc. #1 at 3–4. UMB Bank attached the Settlement Order to its notice of removal and Horne attached the same to its joinder to the removal notice. Doc. #1-7; Doc. #4-6.

[14] The plaintiffs cite the Settlement Order in support of their argument that their claims against Express Grain's grain assets have already been resolved by settlements approved by the Bankruptcy Court. Doc. #14 at 9.

[15] On February 7, 2024, the same day the plaintiffs replied in support of their motion to remand, Judge Maddox entered an agreed order on the liquidating trustee's objections to the disclaiming farmers' proofs of claim, where the plaintiffs, as part of the disclaiming farmers group, "agreed not to seek any additional recovery in the bankruptcy estate" but "preserved all of their options with respect to claims against non-Debtor third parties." *In re Express Grain Terminals, LLC*, No. 21-11832, at Doc. #3420 (Bankr. N.D. Miss. Feb. 7, 2024). This Court takes judicial notice of the Bankruptcy Court's February 7 agreed order, particularly as to the fact that it granted the liquidating trustee's objections and disallowed the disclaiming farmers' proofs of claim. *See Wooley*, 480 F. App'x at 328 ("[A] court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings.") (cleaned up).

The third and final factor weighs against jurisdiction because the plaintiffs' claims are brought under Mississippi law and the facts of the case do not derive from the Confirmation Plan since they pertain to events that occurred before entry of the confirmation order. *See Brickley*, 566 B.R. at 830–31 ("because 'state law, rather than bankruptcy law, will determine the outcome of this dispute, … no facts or law deriving from the reorganization or the plan [is] necessary to the claim[s]'") (quoting *Pelican Ref Co. LLC v. Adams & Reese*, LLP, No. 7-578, 2007 WL 1306808, at *2 (S.D. Tex. May 3, 2007)).

With two of the three factors weighing against related to jurisdiction—because the plaintiffs' claims principally concern post-confirmation relations and the facts of the case do not derive from the Confirmation Plan—there is not related to bankruptcy jurisdiction over the plaintiffs' claims.

### 3. Abstention

Because there is no bankruptcy jurisdiction over the plaintiffs' claims, the Court need not address the plaintiffs' arguments that the Court should abstain pursuant to mandatory abstention or, alternatively, discretionary abstention. However, even had bankruptcy jurisdiction existed, this Court would exercise its discretion to abstain.

Section 1334(c)(1) provides that "nothing in [§ 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). And under § 1452(b), a federal district "court to which [a bankruptcy-related] claim or cause of action is removed may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). To determine whether discretionary abstention

under § 1334(c)(1) or equitable remand under 1452(b) is warranted,[16] courts consider these non-exhaustive factors:

> (1) the effect or lack thereof on the efficient administration of the estate if the court decides to abstain; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or another nonbankruptcy proceeding; (5) any jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the proceeding on the court's docket; (10) the likelihood that the commencement of the proceeding in the court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action.

*In re Roman Cath. Church of Archdiocese of New Orleans*, No. 20-10846, 2023 WL 8359051, at *7 (Bankr. E.D. La. Nov. 30, 2023) (citation omitted).  "No single factor is dispositive, and the Court's determination does not turn on tallying the factors on each side. … [T]he Court may, in its discretion, give greater weight to certain factors."  *In re Viper Prods. & Servs. LLC*, No. 21-50187, 2022 WL 2707879, at *2 (Bankr. N.D. Tex. July 11, 2022) (citing *In re SBMC Healthcare, LLC*, 519 B.R. 172, 192 (Bankr. S.D. Tex. 2014)).

Considering these factors, the Court would find discretionary abstention or equitable remand warranted.  As explained above, this case is not a "core" proceeding.  *See Henderson v. PHC-Cleveland*, 209 F. Supp. 3d 890, 892 (N.D. Miss. 2016) (where case is non-core, discretionary abstention warranted).  Comity also weighs strongly in favor of abstention or remand because the plaintiffs assert only state law claims, including a claim for aiding and abetting fraud which is unsettled under Mississippi state law.  *See id.* at 892–93 (comity weighs in favor of

---

[16] *Abraham v. Smith*, 550 B.R. 314, 324 (N.D. Miss. 2016) ("[I]n deciding whether to remand a case on equitable grounds, a court considers the same factors underlying discretionary abstention.") (citing *Patterson v. Morris*, 337 B.R. 82, 96 (E.D. La. 2006)).

abstention where state law claims predominate and are unsettled); *Charles Schwab & Co. Inc. v. Girod LoanCo, LLC*, No. 19-13099, 2020 WL 3056397, at *6 (E.D. La. June 9, 2020) ("Considering that the claims in this action are governed exclusively by state law and invoke no substantive right created by federal law or federal bankruptcy law, respect for state law and the interest of comity with state courts heavily favor abstention."). While Horne argues resolution of these claims could affect the administration of the estate due to its indemnity claims, *see* Doc. #33 at 23, such would require both the plaintiffs to prevail on their claims and Horne to prevail on its indemnity claims. Where the effect on the bankruptcy estate "hinges on several contingencies," the Court may abstain. *In re Houston Reg'l Sports Network, LP*, 514 B.R. 211, 215 (Bankr. S.D. Tex. 2014) (abstention and remand warranted where "outcome of … lawsuit 'conceivably could entitle the Defendants to indemnification'"). And though the defendants argue that the plaintiffs' claims are closely related to the bankruptcy proceeding because they arise from Express Grain's conduct "that drove it to bankruptcy," Doc. #33 at 23, Express Grain is not a party to this case and, as explained above in the Court's § 1334(e) jurisdiction analysis, the plaintiffs seek to hold the defendants, not Express Grain, liable for their alleged misrepresentations and omissions. *See In re Trimjoist Corp.*, No. 12–15405, 2013 WL 3934368, at *5 (Bankr. N.D. Miss. July 30, 2013) (abstention warranted where debtor not a party). For all these reasons, discretionary abstention or equitable remand would be appropriate if bankruptcy jurisdiction existed.[17]

## IV
## Motions to Dismiss

Since the Court has determined that it does not have diversity jurisdiction over this case and does not have bankruptcy jurisdiction over this case, the pending motions to dismiss will be denied without prejudice.

---

[17] Accordingly, the Court remands the case on this alternative basis.

# V
## Conclusion

Based on the rulings above, UMB Bank's motion to dismiss [10] is **DENIED without prejudice**; Horne' motion to dismiss [8] is **DENIED without prejudice**; and the plaintiffs' motion to remand [13] is **GRANTED**. This case is **REMANDED** to the Circuit Court of Leflore County, Mississippi.[18]

  **SO ORDERED**, this 30th day of July, 2024.

  /s/Debra M. Brown
  **UNITED STATES DISTRICT JUDGE**

---

[18] In its response to the plaintiffs' motion to remand, UMB Bank "requests this Court certify an order remanding this case to state court [to the United States Court of Appeals for the Fifth Circuit] … pursuant to 28 U.S.C. § 1292(b)." Doc. #31 at 35. Section 1292(b) permits a district court, within its discretion, to certify an interlocutory appeal where (1) a "controlling question of law" is involved, (2) there is "substantial ground for difference of opinion" about the question of law, and (3) immediate appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011) (Section 1292(b), "gives a district judge discretion to certify an order."). The Fifth Circuit has noted that an interlocutory appeal under § 1292(b) "is available only in limited circumstances." *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283, 288 (5th Cir. 2015); *accord Clark-Dietz & Assocs.-Engineers, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68–69 (5th Cir. 1983) ("Section 1292(b) appeals are exceptional," and "do[] not lie simply to determine the correctness of a judgment."). And "[t]he moving party bears the burden of demonstrating that interlocutory appeal is appropriate." *United States ex rel. Branch Consultants, LLC. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 813 (E.D. La. 2009).

UMB Bank's request for this relief in its response to the motion to remand is not properly before this Court and is denied for that reason. *See* L.U. Civ. R. 7(b)(3)(C) ("A response to a motion may not include a counter-motion in the same document."). Regardless, UMB Bank has not shown that an interlocutory appeal is appropriate in this case. Aside from asserting that "[t]he jurisdictional issue presented in this case is a 'controlling question of law' whose resolution 'may materially advance the ultimate termination of the litigation,'" Doc. #31 at 35 (quoting 28 U.S.C. § 1292(b)), UMB Bank does not explain how immediate appeal to the Fifth Circuit would advance the litigation, especially when the improper joinder issue discussed above turns on whether aiding and abetting fraud is a cognizable claim under Mississippi law. So to the extent UMB Bank requests that the Court certify its order based on the improper joinder determination, such is denied. And to the extent the Court remands under the alternative basis of discretionary abstention, because under § 1334(d), "[a]ny decision to abstain … made under [§ 1334(c)] … is not reviewable by appeal or otherwise by the court of appeals under section … 1292," 28 U.S.C. § 1334(d), UMB Bank's request for § 1292(b) certification is denied.